UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONALD PENNETTA,

                                        Plaintiff,        Case # 18-CV-6093-FPG

v.                                                                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

## INTRODUCTION

Plaintiff Ronald Pennetta brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 13. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On February 20, 2014, Pennetta protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 245-46. He alleged disability since December 21, 2013 due to a heart condition, high blood pressure and cholesterol, hearing loss, a stroke, neuropathy, and mental health issues. Tr. 275. On July 11, 2016, Pennetta appeared and testified at a hearing before Administrative Law Judge Bruce Fein ("the ALJ"). Tr. 69-102. On September 14, 2016,

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

Pennetta, a medical expert, and a vocational expert ("VE") participated in a supplemental hearing before the ALJ by videoconference. Tr. 103-18. On September 22, 2016, the ALJ issued a decision finding that Pennetta was not disabled within the meaning of the Act. Tr. 41-57. On December 3, 2017, the Appeals Council denied Pennetta's request for review. Tr. 1-7. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*Id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ analyzed Pennetta's claim for benefits under the process described above. At step one, the ALJ found that Pennetta had not engaged in substantial gainful activity since the alleged onset date of December 21, 2013 through his date last insured of September 30, 2015. Tr. 44. At step two, the ALJ found that Pennetta had glaucoma, cardiomyopathy, obesity, and depressive, anxiety, mood, and personality disorders, which constituted severe impairments. Tr. 44-45. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 45-48.

Next, the ALJ determined that Pennetta retained the RFC to perform light work[2] with additional limitations. Tr. 48-54. Specifically, the ALJ found that Pennetta could lift up to 20 pounds occasionally and 10 pounds frequently; could stand, walk, and six for about six hours total in an eight-hour workday with normal breaks; could occasionally balance; could not climb ropes, ladders, or scaffolds; could perform jobs requiring only occasional peripheral acuity; could perform only simple, routine, and repetitive tasks; needed a low-stress job with only occasional decision-making, workplace changes, and exercise of judgment; and could only occasionally interact with the public, coworkers, and supervisors. Tr. 48-49.

At step four, the ALJ relied on the VE's testimony and found that Pennetta could not perform his past relevant work. Tr. 54-55. At step five, the ALJ relied on the VE's testimony and

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

found that Pennetta could have adjusted to other work that existed in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 55-57. Specifically, the VE found that Pennetta could have worked as a small products assembler, mail clerk, and office helper. Tr. 56. Accordingly, the ALJ concluded that Pennetta was not disabled. Tr. 57.

**II.   Analysis**

Pennetta argues that remand is required because the Appeals Council erred when it declined to review his case.[3] ECF No. 10-1 at 12-13. Specifically, Pennetta asserts that the Appeals Council should have considered the opinions of social worker Barbara Burke and psychiatrist Tulio R. Ortega, M.D., because they are new, material, and relate to the relevant period, and there is a reasonable probability that they would change the outcome of the decision. *Id.* The Commissioner argues that the new evidence does not undermine the ALJ's decision and therefore the Appeals Council did not err by declining to consider it. ECF No. 13-1 at 19-20.

   **A.   Submitting Evidence to the Appeals Council**

The Appeals Council must consider additional evidence that a claimant submits if the claimant can show good cause for not submitting it to the ALJ,[4] it is new, material, and relates to the period on or before the ALJ's decision, and there is a reasonable probability that it would change the outcome of the decision. *Simon v. Berryhill*, No. 1:16-cv-04088(FB), 2017 WL 4736732, at *2 (E.D.N.Y. Oct. 19, 2017) (citing 20 C.F.R. § 404.970(a)(5), (b)).

---

[3] Pennetta advances another argument that he believes requires reversal of the Commissioner's decision. ECF No. 10-1 at 8-14. The Court will not reach that argument because it remands based on the Appeals Council's error.

[4] On May 1, 2017, the Appeals Council changed the rules it applies when considering whether to review a claimant's case. Tr. 8. Specifically, the Appeals Council now requires the claimant to show "good cause" for failing to submit additional evidence to the SSA at least five business days before his hearing. *Id.* Because Pennetta's case was pending before the Appeals Council before the rules changed, the Appeals Council indicated that it would "find that [Pennetta] showed good cause for not submitting additional evidence earlier." Tr. 9. Pennetta still had to demonstrate that the additional evidence was new and material, related to the period at issue, and showed a reasonable probability of changing the outcome of the ALJ's decision. *Id.*

5

Evidence is new if it is not cumulative of what is already in the record. *Id.* (citation omitted). It is material if it is relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently. *Webb v. Apfel*, No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1990)).

As to whether the additional evidence relates to the period on or before the ALJ's decision, "[m]edical evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing." *Pulos v. Comm'r of Soc. Sec.*, No. 1:18-CV-00248 EAW, 2018 WL 5801551, at *6 (W.D.N.Y. Nov. 5, 2018) (citing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). This is because the evidence "may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.'" *Id.* (quoting *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (summary order)). But the Appeals Council does not have to consider evidence that "does not provide additional information about the claimant's functioning during the relevant time period" and "instead relates to his or her functioning at some later point in time." *Id.* (citation omitted). If the Appeals Council rejects additional evidence because it does not relate to the relevant period, it "will send [the claimant] a notice that explains why it did not accept the additional evidence." 20 C.F.R. § 404.970(c).

When the Appeals Council denies review after considering new evidence, the Court "review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

### B. Evidence Submitted to the Appeals Council and the Appeals Council's Order

Pennetta submitted two Mental Health Assessment Forms to the Appeals Council[5]—one from social worker Ms. Burke dated January 18, 2017[6] (Tr. 17-22) and one from psychiatrist Dr. Ortega dated January 19, 2017 (Tr. 10-15). The Appeals Council found that this evidence did "not show a reasonable probability that it would change the outcome of the [ALJ's] decision" and indicated that it "did not consider and exhibit this evidence." Tr. 2.

### C. Ms. Burke's Opinion

At the time of his decision, the ALJ had two opinions from Ms. Burke—one from January 15, 2016 and one from June 15, 2016. The ALJ rejected both opinions in part because they were rendered after Pennetta's date last insured of September 30, 2015 and did not "indicate that they were intended to be anything else but contemporaneous assessments of [Pennetta]'s mental functioning as of January 15, 2016 and June 15, 2016." Tr. 54. Accordingly, he found neither of Ms. Burke's assessments "particularly probative" of Pennetta's mental functioning as of his date last insured. *Id.*

On December 15, 2016, Pennetta's attorney sent Ms. Burke a letter explaining the issue set forth above. Tr. 353-54. He asked her to review Pennetta's prior treatment records so she could render a retrospective opinion as to Pennetta's ability to work from December 21, 2013 to September 30, 2015. *Id.* Thus, Ms. Burke's opinion submitted to the Appeals Council dated

---

[5] Pennetta also submitted six pages of treatment notes from Dr. Ortega dated September 15 through November 28, 2016. Tr. 32-37. The Appeals Council found that these records did not relate to the relevant period and thus did not affect the ALJ's decision. Tr. 2. Pennetta does not argue that the Appeals Council erred by rejecting these records, and therefore the Court will not discuss them.

[6] The Court notes that the form is actually dated January 18, 2016. Tr. 22. This appears to be an error, however, because the ALJ did not render his decision until September 22, 2016, and therefore Ms. Burke's retrospective opinion would have to be issued after that date. Moreover, the parties seem to agree in their briefs that the opinion at issue was rendered on January 18, 2017, not 2016. ECF No. 10-1 at 12; ECF No. 13-1 at 11.

January 18, 2017 specifically indicated that she reviewed all of Pennetta's records from the relevant period and cited evidence from that period in support of her opinion. Tr. 17, 22.

Ms. Burke's opinion is new because it did not exist until after the ALJ's decision and is not cumulative of other record evidence. Although the record contains other opinions from Ms. Burke, they were rendered on different forms that contain different prompts and information. Tr. 17-22, 433-37, 769-72.

Ms. Burke's opinion also relates to the relevant period because she specifically indicated that she reviewed all of Pennetta's records from December 21, 2013 to September 30, 2015 and cited evidence from that time period in support of her opinion. Tr. 17, 22. Thus, her opinion sheds light on Pennetta's limitations during that time. *See Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) (noting that "the existence of a pre-existing disability can be proven by a retrospective opinion" if it "refer[s] clearly to the relevant period of disability" and does "not simply express an opinion as to the claimant's current status").

Ms. Burke's opinion is also material because it is relevant to Pennetta's conditions during the time period at issue, namely, his mental health conditions, and probative because it could have influenced the Commissioner to decide the case differently. Although the Appeals Council concluded, without any explanation, that Ms. Burke's opinion did not show a "reasonable probability" of changing the outcome of Pennetta's case, her opinion undermines the ALJ's RFC determination in several ways. The ALJ found, for example, that Pennetta could occasionally interact with the public, coworkers, and supervisors, but Ms. Burke opined that Pennetta was unable to work with others, accept instructions from supervisors, respond to supervisor criticism, get along with coworkers or peers, or interact with the public. Tr. 19-20. The ALJ also found that Pennetta could perform a low-stress job with only occasional decision-making, workplace

8

changes, and exercise of judgment, but Ms. Burke opined that Pennetta was "unable to meet competitive standards"[7] in dealing with normal work stress or responding appropriately to workplace changes. *Id.* Ms. Burke also opined that Pennetta's impairments or treatment would make him absent from work more than four days per month which, if credited, would render him disabled.[8] Tr. 21.

The Court recognizes that, as a licensed clinical social worker, Ms. Burke is an "other source," rather than an "acceptable medical source," whose opinion is not entitled to controlling weight. *Martino v. Comm'r of Soc. Sec.*, No. 1:17-CV-01071 EAW, 2018 WL 5118318, at *7 (W.D.N.Y. Oct. 19, 2018); *see also* 20 C.F.R. § 404.1513(a), (d) (effective Sept. 3, 2013 to Mar. 26, 2017); S.S.R. 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). But evidence from "other sources," including social workers, may be based on "special knowledge" of the claimant and "provide insight" into the severity of the claimant's impairments and functional limitations. S.S.R. 06-03p, 2006 WL 2329939, at *2.

Depending on the facts of the case, the opinion of an "other source" can outweigh the opinion of an acceptable medical source if, for example, she has seen the individual more often and has provided better supporting evidence and a better explanation for her opinion. *Id.* at *5; *see also* 20 C.F.R. § 404.1527(f)(1). Here, Ms. Burke's opinion is particularly important to Pennetta's disability application because consultative examiner Yu-Ying Lin, Ph.D. provided the only other medical opinion as to Pennetta's ability to perform mental work functions, and the ALJ relied heavily on that opinion. Tr. 52-53, 404-07. Dr. Liu examined Pennetta only one time on April 21, 2014. Tr. 404. Ms. Burke, however, first treated Pennetta on November 17, 2015—just

---

[7] This means that Pennetta cannot "satisfactorily" perform these activities "independently, appropriately, effectively, and on a sustained basis in a regular work setting." Tr. 19.

[8] The VE testified that an individual who consistently misses two days of work per month is unemployable. Tr. 116.

9

seven weeks after his date last insured—and indicated that she had seen him one to two times per month since then when she rendered her January 18, 2017 opinion as to Pennetta's ability to function during the relevant period. Tr. 17. Ms. Burke's assessment is also thorough and well explained and contains a great deal of information in support of her opined limitations. Tr. 17-22.

Thus, because Ms. Burke's opinion is new, material, and relates to the relevant time period, and there is a reasonable probability that her opinion could have changed the outcome of Pennetta's case, the Appeals Council erred by refusing to consider it.

### D. Dr. Ortega's Opinion

Dr. Ortega began treating Pennetta on January 22, 2016—about four months after Pennetta's date last insured. Tr. 441-46. Pennetta submitted an opinion from Dr. Ortega dated January 19, 2017 to the Appeals Council. Tr. 10-15.

Dr. Ortega's opinion is new because it did not exist until after the ALJ's decision and is not cumulative of other record evidence. Although the record contains treatment notes from Dr. Ortega, those notes do not assign specific functional limitations. Tr. 774-76, 807-16.

Dr. Ortega's opinion is also material because it is relevant to Pennetta's conditions during the time period at issue, namely, his mental health conditions, and probative because it could have influenced the Commissioner to decide the case differently. Although the Appeals Council concluded, without any explanation, that Dr. Ortega's opinion did not show a "reasonable probability" of changing the outcome of Pennetta's case, his opinion undermines the ALJ's RFC determination in several ways. The ALJ found, for example, that Pennetta could occasionally interact with the public, coworkers, and supervisors, but Dr. Ortega opined that Pennetta had severe limitations in his ability to interact appropriately with the public, maintain socially appropriate behavior, accept instructions from supervisors, respond appropriately to supervisor

10

criticism, and get along with coworkers or peers. Tr. 12-13. The ALJ also found that Pennetta could perform a low-stress job with only occasional decision-making, workplace changes, and exercise of judgment, but Dr. Ortega opined that Pennetta could not respond appropriately to workplace changes or deal with normal work stress. Tr. 12. Dr. Ortega also opined that Pennetta's impairments or treatment would make him miss more than four days of work per month which, if credited, would render him disabled. Tr. 14, 116.

The more difficult question is whether Dr. Ortega's opinion relates to the period at issue. Although Pennetta asserts that he asked Dr. Ortega to render a retrospective opinion as to his ability to work during the relevant period (ECF No. 10-1 at 13), it is unclear whether Pennetta's attorney sent Dr. Ortega a letter asking him to review Pennetta's prior treatment records, like he did with Ms. Burke. Dr. Ortega's opinion also does not illuminate this issue—when asked to explain the basis for his retrospective opinion, he merely wrote "see record." Tr. 15. It is unclear what "record" he is referring to and his treatment notes do not specifically discuss the period at issue. Tr. 32-37, 774-76, 807-16. Thus, it is possible that Dr. Ortega's opinion demonstrates that Pennetta's mental health declined after the period at issue; however, it is also possible that Dr. Ortega's opinion clarifies Pennetta's mental condition during the relevant period and suggests that his condition was more serious than previously thought. But the Appeals Council did not reject Dr. Ortega's opinion based on timing and if it decides to do so on remand, it must explain why. *See* 20 C.F.R. § 404.970(c). Accordingly, because Dr. Ortega's opinion is new, material, and may relate to the relevant time period, and there is a reasonable probability his opinion could have changed the outcome of Pennetta's case, the Appeals Council erred by refusing to consider it.

For all the reasons stated, the Court finds the Appeals Council erred by not considering Ms. Burke and Dr. Ortega's opinions and therefore remand is required. Those opinions reveal that

11

Pennetta has severe limitations in his ability to interact with others, deal with stress, and handle workplace changes, and that he will be absent from work more than four days per month, all of which undermine the ALJ's RFC determination and could change the outcome of Pennetta's case.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

    IT IS SO ORDERED.

Dated: January 9, 2019
       Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            Chief Judge
                                            United States District Court